# CV 15        6342

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

FILED
CLERK

2015 NOV -5  AM 10: 59

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

KUNTZ, J.
MANN. M.J.

---

M.W. and Z.W. by N.C., B.B. by A.B., D.W. by
D.M., and S.Z. by A.Z., individually and on behalf
of all persons similarly situated,

Plaintiffs,

-against-

ACHIEVEMENT FIRST CROWN HEIGHTS,
ACHIEVEMENT FIRST INC., NEW YORK CITY
DEPARTMENT OF EDUCATION, NEW YORK
STATE DEPARTMENT OF EDUCATION,

Defendants.

**Civil Action No.:**

**CLASS ACTION
COMPLAINT**

**DEMAND FOR JURY TRIAL**

---

Plaintiffs, as and for their complaint against Defendants Achievement First Crown

Heights ("AF Crown Heights"), Achievement First Inc. ("AF Inc.," and together with AF Crown

Heights, the "AF Defendants"), the New York City Department of Education ("DOE"), and the

New York State Department of Education ("NYSED"), respectfully allege on knowledge as to

themselves and their own actions, and on information and belief as to all other matters, as

follows:

### SUMMARY OF THE ACTION

1.    Plaintiffs bring this class action on behalf of students with disabilities enrolled at AF

Crown Heights, a charter school in Brooklyn, New York, for relief from Defendants' systemic

failure to provide them a free appropriate public education, in violation of their rights under the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of

the Rehabilitation Act, 29 U.S.C. § 794, and N.Y. Educ. Law § 4401 *et seq.*

2.    AF Crown Heights is part of a network of schools operated by AF Inc.  AF Inc. declares that its schools "sweat[] the small stuff"—punishing even minor disciplinary infractions, such as a student fidgeting or failing to look at the teacher while he or she is teaching, without regard to whether the student's behavior is caused by a disability.

3.    AF Crown Heights applies AF Inc.'s rigidly disciplinarian approach to students with disabilities without accounting for their special needs.  As one AF Crown Heights official told the parent of an AF Crown Heights student, AF Crown Heights is required to accept students with disabilities but, once enrolled, these students must behave exactly as non-disabled students do.  Or, as a teacher told another parent, to accommodate children with disabilities would be to give them "special lenience"—which the AF Defendants' model does not allow.  This approach has proven devastating to students with disabilities at AF Crown Heights, stunting their educational progress and emotional growth.  And AF Crown Heights also regularly fails to provide students with disabilities other accommodations they need in order to access education.

4.    The governmental entities that have an obligation to intervene have, instead, turned a blind eye.  DOE is responsible for ensuring that students with disabilities receive a free appropriate public education without regard to whether they attend a charter school or a traditional public school.  But DOE appears to view AF Crown Heights and other charter schools as falling outside its scope of responsibility:  in the words of one of its representatives, DOE gives AF Crown Heights "free range" to provide its students with the necessary accommodations—or not.

5.    The AF Defendants and DOE have violated the rights of AF Crown Heights students with disabilities in at least four general ways:

a.  First, the AF Defendants and DOE systematically fail to identify students with disabilities, which they are required to do.  The AF Defendants do not refer such students to DOE for evaluation, and DOE does not evaluate such students, even where parents have requested evaluations, or the students are routinely disciplined for behaviors stemming from recognizable disabilities and/or they are failing to make educational progress.

b.  Second, for students who are acknowledged to have disabilities, DOE fails to appropriately develop education plans known as Individualized Education Programs ("IEPs").  Instead, DOE convenes meetings to develop IEPs without necessary participants, formulates IEPs based on inadequate and out-of-date information, and approves placements in educational settings that are inappropriate to students' needs because those are the only settings available at AF Crown Heights.

c.  Third, for those students who have IEPs, the AF Defendants systematically fail to implement them, including, for example, by failing to inform students' teachers about IEP directives, including those concerning the appropriate management of disability-related behaviors; failing to provide mandated special services like occupational therapy, physical therapy, and paraprofessional support; and failing to educate students in appropriate educational settings.  DOE, for its part, fails to take the steps necessary to ensure that students with disabilities at AF Crown Heights receive the educational supports and services mandated by their IEPs.

d.  And fourth, the AF Defendants discipline AF Crown Heights students, starting in kindergarten, for behaviors that stem from their disabilities and which they cannot

control, with the effect that these students are excluded from education, confined in timeout rooms and other unsuitable settings, and are shamed and humiliated, in many cases compounding the effects of their disabilities.

6.  NYSED has allowed AF Defendants' and the DOE's violations to go unchecked, thereby abdicating NYSED's statutory responsibility to protect students with disabilities by ensuring compliance with the IDEA.

7.  To remedy these pervasive violations of federal and state law, the plaintiff class seeks comprehensive injunctive relief, as described more fully below.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 20 U.S.C. § 1415(i)(2)(a), 29 U.S.C. § 794, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

9.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because it is the judicial district in which Plaintiffs reside, in which AF Crown Heights is located, and in which a substantial part of the events giving rise to Plaintiffs' claims occurred.

## PARTIES

10.  Initials are used throughout this Complaint to preserve the anonymity of the children Z.W., D.W., B.B., M.W., and S.Z. and their mothers, N.C., D.M., A.B. and A.Z., and the confidentiality of information about them, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, the privacy provisions of the IDEA, 20 U.S.C. § 1417(c), and of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.

11.  Plaintiff Z.W. is a minor residing in Brooklyn and is a student at AF Crown Heights. He brings this lawsuit through his mother, N.C.

12.  Plaintiff D.W. is a minor residing in Brooklyn and is a student at AF Crown Heights. He brings this lawsuit through his mother, D.M.

13.  Plaintiff B.B. is a minor residing in Brooklyn and is a student at AF Crown Heights. He brings this lawsuit through his mother, A.B.

14.  Plaintiff M.W. is a minor residing in Brooklyn and is a student at AF Crown Heights. He brings this lawsuit through his mother, N.C.

15.  Plaintiff S.Z. is a minor residing in Brooklyn and is a student at AF Crown Heights. He brings this lawsuit through his mother, A.Z.

16.  Defendant AF Crown Heights is a New York education corporation that operates a charter school consisting of an elementary school, a middle school, and a high school in Crown Heights, Brooklyn.  AF Crown Heights is a direct recipient of federal and state funds.

17.  Defendant AF Inc. is a nonprofit organization incorporated in the state of Connecticut.  AF Inc. is a charter management organization that operates AF Crown Heights and other Achievement First network schools, including by providing oversight, training, staffing and curricula for AF Crown Heights.  Upon information and belief, AF Inc. receives federal and state funds indirectly, from fees paid to it on a percentage basis by AF Crown Heights.

18.  DOE is the local educational agency ("LEA") responsible for AF Crown Heights' compliance with the IDEA, 20 U.S.C. § 1412 *et seq.*

19.  NYSED is the state educational agency ("SEA") responsible for IDEA compliance by New York public schools.  The governing body of NYSED is the Board of Regents, which issued and oversees AF Crown Heights's charter.  20 U.S.C. §§ 1412(a)(11); N.Y. Educ. Law

§§ 305(1), 2851-52.

# BACKGROUND

<u>I.</u>     <u>Statutory and Regulatory Framework</u>

A. <u>Education of Children with Disabilities</u>

20.   Several overlapping federal and state laws govern the education of children with disabilities in New York State.  These laws include the federal IDEA, Section 504 of the federal Rehabilitation Act, and New York Education Law.  In combination, these laws impose an overarching obligation on the defendants to provide a "free appropriate public education" ("FAPE") to students with disabilities, including at least four component obligations at issue in this lawsuit:

a.  the "child find" obligation, to identify such students;

b.  the obligation to develop an appropriate IEP;

c.  the obligation to implement an appropriate IEP; and

d.  the obligation to refrain from punishing children for disability-related behaviors and from otherwise discriminating against them.

21.   The IDEA imposes upon each State that receives federal funds certain obligations to ensure that children with disabilities receive a FAPE.  20 U.S.C. § 1412(a)(1)(A).  The IDEA defines a "child with a disability" to include children who require special education because of enumerated conditions including autism, learning disability, emotional disturbance and, for children between the ages of three and nine, because of developmental delays.  20 U.S.C. § 1401(3)(B); *see* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz)(10).

22.   Section 504 provides that individuals with disabilities shall not "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  Under Section

504, claims may be 1) brought by a "qualified person" (*i.e.*, an individual with a disability) 2)

who was excluded from participation in a public entity's programs or was otherwise

discriminated against by that entity, 3) if the discrimination was due to his or her disability.

Section 504 defines "individual with a disability" to include a person with a physical or mental

disability that impedes major life activities such as "learning, reading, concentrating, thinking,

and/or communicating."  29 U.S.C. 794(a); 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1),

(2)(A).  Section 504 requires recipients of federal funds that operate public education programs,

such as charter schools and networks, to provide a FAPE to children with disabilities.  34 C.F.R.

§ 104.33.

23.  Likewise, New York law requires that children with disabilities be "offered an

opportunity to receive the benefits of an appropriate public education."  N.Y. Educ. Law §

3204(4-a).  New York law defines a "child with a disability" or "student with a disability" to

include "a person under the age of twenty-one who, because of physical, mental, or emotional

reasons can only receive appropriate educational opportunities from a program of special

education."  N.Y. Educ. Law § 4401(1).

24.  Under these statutory schemes, the obligation to provide a FAPE means the

obligation to educate a child with a disability in the manner directed by the child's IEP, which

can include special education and services.  *See* 20 U.S.C. §§ 1401(9), 1414(d)(2); N.Y. Educ.

Law §§ 3204; 4401.

25.  Under the IDEA, LEAs are responsible for developing IEPs and ensuring that

students with disabilities receive the educational supports and services called for by those

students' IEPs.  20 U.S.C. § 1414.

26. The IDEA also provides that each State have an SEA that is "primarily responsible" for ensuring that IDEA requirements are met throughout the State. 20 U.S.C. § 1401(32); *see* 20 U.S.C. § 1412(a)(11)(A).

27. As the SEA in New York, NYSED is responsible for ensuring that all students within the State receive a FAPE, and that all schools in the state comply with the IDEA. 20 U.S.C. § 1412(a)(11).

28. The Child Find Obligation. Children with disabilities must be "identified, located, and evaluated" to determine whether they need special education and services. 20 U.S.C. § 1412(a)(3)(A); N.Y. Educ. Law § 4401-a. This "child find" duty is triggered whenever there is reason to suspect that a child has a disability and that special education services may be needed to meet the child's unique educational needs. *See* 34 C.F.R. § 300.111(c)(1). A child's poor academic performance and/or a pattern of disruptive behaviors can constitute reason to suspect the child has a disability.

29. Upon a referral, DOE must conduct a full initial evaluation within sixty days. 20 U.S.C. § 1414(a)(1)(A)-(B); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(1).

30. NYSED or DOE must ensure that reevaluations of students with disabilities are conducted at least once every three years. 20 U.S.C. § 1414(a)(2).

31. IEP Development. An IEP is a written, up-to-date statement of a child's level of academic achievement; measurable annual goals for the child's progress; and a statement of the services, special education, supplementary supports, and program modifications that will be provided to support the child's progress, among other things. 20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.320.

8

32.  An IEP must provide for special education and related services tailored to meet the unique needs of a particular child, and it must be reasonably calculated to enable the child to receive educational benefits.  20 U.S.C. § 1414(d)(1)(B).

33.  DOE is responsible for developing, reviewing, and periodically updating each child's IEP by convening a meeting of an "IEP team" that must include the child's parent(s), at least one of the child's general education teachers, at least one of the child's special education teachers or providers, a qualified representative of DOE, and, if appropriate, the child.  20 U.S.C. § 1414(d)(1)(B); N.Y. Educ. Law § 4402(1)(b)(2).

34.  DOE may not determine a child's placement or the other provisions of his IEP in advance of an IEP meeting, because to do so would deprive parents of the opportunity to meaningfully participate in the IEP process.  *See* 34 C.F.R. 300.322.

35.  Each child with an IEP is entitled to receive the education, services, supplementary supports, and program modifications specified in the IEP.

36.  Each IEP must specify the educational setting in which the child is to be placed. These settings fall along a continuum from a general education classroom, which is the least restrictive setting, to more restrictive settings like special classes, classes with low student to teacher ratios, and classes at special education schools.  34 C.F.R. § 300.115.

37.  For example, a child's IEP may direct that she is to be placed in an Integrated Co-Teaching ("ICT") classroom.  To qualify as an ICT classroom, a classroom must have two teachers, one special education teacher and one general education teacher, who collaboratively instruct a group of students consisting of students with disabilities and students without disabilities; up to twelve of the students in an ICT classroom may be students with disabilities. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(g)(1-2).

38. IEPs may also provide for a range of other services and accommodations. For example, they may provide that a child should receive services such as physical or occupational therapy, counseling, and speech and language therapy. They may direct that a child receive the assistance of a paraprofessional, who is a person assigned to an individual student to help with tutoring, classroom behavior, and instructional support, among other things. *See* 34 C.F.R. § 200.59. Or they may direct that a school provide the child extra time to take tests, test him or her in a separate location from other children, or give other testing accommodations. 34 C.F.R. § 300.320.

39. Each IEP must indicate whether the student exhibits behaviors that are disruptive and/or interfere with learning and, if so, whether a functional behavioral assessment ("FBA") should be conducted and a Behavior Intervention Plan ("BIP") developed to support the student's access to instruction notwithstanding the behaviors. 34 C.F.R. § 300.324; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22.

40. A BIP is a written statement that includes "a description of the problem behavior, global and specific hypotheses as to why the problem behavior occurs and intervention strategies that include positive behavioral supports and services to address the behavior." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1.

41. Even if the IEP team decides that a FBA need not be conducted for a child, if it finds that the child's behaviors are disrupting learning, the IEP team must consider how to use "positive behavioral interventions and supports, and other strategies." 20 U.S.C. § 1414(d)(3)(b)(i).

42. IEP Implementation. IEPs must be implemented "as soon as possible" following the IEP meeting. 34 C.F.R. § 300.323(c)(2); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(e)(1)(i).

43.   Like traditional public schools, charter schools must implement their students' IEPs. 34 C.F.R. § 300.209(a); N.Y. Educ. Law § 2854(1)(b).  Charter schools may provide special education and services themselves or arrange to have the services provided by an outside contractor or by the school district.  34 C.F.R. § 300.209(a); N.Y. Educ. Law § 2853(4).

44.   Limits on Discipline.  Under the IDEA and Section 504, schools may not apply disciplinary measures to students with disabilities in a manner that discriminates against those students or in a manner that is inconsistent with those students' IEPs and/or BIPs.

45.   New York law explicitly prohibits schools from placing students with disabilities in "timeout rooms" except as specifically authorized in those students' BIPs, and only if staff can continuously see and hear the child and other conditions are met.  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22.

46.   New York law further specifically prohibits the use of "aversive" interventions to respond to student behavior.  "Aversive" interventions are those that are intended to induce pain or discomfort to change the student's behavior, including restrictions on movement through restraint devices, denial or delay of food, and painful or intrusive stimuli.  N.Y. Comp. Codes R. & Regs. tit. 8, §§ 19.5(b), 200.22(e).

47.   State and federal law also provides a child certain procedural rights when he or she is repeatedly removed from instruction for disciplinary reasons.  When the time away from instruction totals more than ten days in a school year, the child has experienced a "change of placement," and is entitled to a "manifestation determination review" (MDR) to determine whether the problem behavior "was caused by, or had a direct and substantial relationship to, the child's disability."  20 U.S.C. § 1415(k)(1)(E); 34 C.F.R. § 300.536(a); N.Y. Comp. Codes R. & Regs. tit. 8, § 201.4(a).  If it is determined that the behavior was so related, the MDR participants

must conduct a FBA and develop a BIP for the child.  N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200.1, 200.22.

     B.  Charter Schools

48.  Charter schools are "independent and autonomous public school[s]."  N.Y. Educ. Law § 2853(1)(c).

49.  Charter schools in New York receive state and federal funds, paid by the State. Charter schools receive additional funding for students with disabilities, "in proportion to the level of services for [each] student with a disability that the charter school provides directly or indirectly."  N.Y. Educ. Law §§ 2856(b); 4410-b(4).

50.  Like traditional public schools, charter schools must comply with all laws and regulations regarding health, safety, civil rights, and special education, and they must educate children with special needs.  N.Y. Educ. Law § 2854(1)(b).  This last obligation requires charter schools to provide a FAPE to children with disabilities and to implement students' IEPs.  34 C.F.R. § 300.209(a); N.Y. Educ. Law § 2853(4); N.Y. Educ. Law § 2854(1)(b) .

51.  NYSED is responsible for overseeing each charter school to "ensure that the charter school is in compliance with all applicable laws, regulations and charter provisions," including special education laws.  N.Y. Educ. Law § 2853(2).  NYSED can take punitive action against a school for noncompliance, including by terminating or refusing to renew the school's charter. N.Y. Educ. Law §§ 2855, 2857.

52.  In New York, a charter school's LEA for IDEA purposes is the local school district. N.Y. Educ. Law § 2853(4)(a).

53.  DOE has created "Committee on Special Education" ("CSE"), which is responsible for developing IEPs for public and charter students at schools within the CSE's jurisdiction, including charter schools such as AF Crown Heights. *See* N.Y. Educ. Law § 4402(1)(b)(1).

II.  AF Defendants

54.  AF Inc. views "sweating the small stuff" as integral to its mission. As AF Inc. puts it on its website:

> Sweating the small stuff:  In many urban schools, teachers and leaders 'pick their battles,' only addressing egregious instances of poor behavior. Achievement First, on the other hand, has adopted sociologist James Q. Wilson's 'broken windows' theory that even small details can have a significant effect on overall culture, and we believe that students will rise to the level of expectations placed on them.

55.  This "sweat[] the small stuff" approach means that AF Inc. expects its schools to accept no excuses for infractions of the code of conduct—namely, to ensure that teachers and school personnel consistently and predictably punish students for every infraction of the school's code of conduct, however minor.

56.  AF Inc. ensures that its schools, including AF Crown Heights, execute the Achievement First mission through, among other things, centralized hiring and staffing decisions and training for teachers and other school employees.  Teachers' evaluations under the "AF Essentials Rubric" are based in significant part on the extent to which they catch, and punish, all infractions.

57.  Consistent with AF Inc.'s philosophy, AF Crown Heights imposes, in an absolute and unwavering manner, a pre-determined punishment for every infraction of the code of conduct, regardless of individual circumstances.  AF Crown Heights expects and requires its teachers to punish students for minor infractions of the school's code of conduct, such as the

requirement that students fold their hands atop their desks during most class time, without regard to whether students have disabilities that make it impossible for them to perform those behaviors, and without regard to those students' right to accommodations.

58.   This emphasis on rigid discipline clashes with the AF Defendants' legal obligations to students with disabilities.

59.   Neither AF Inc. nor AF Crown Heights expects or requires its teachers to comply with students' IEPs or to otherwise accommodate students with disabilities.  For example, successful inclusion of students with disabilities in instruction carries almost no weight in teacher evaluations, and the extent to which teachers comply with IEPs is not measured.

60.   AF Inc. is legally responsible for AF Crown Heights's violations of law.  In AF Inc.'s own words, it "holds schools accountable and … has the power and expertise to intervene and take corrective action," and has the responsibility to "ensure that special education students achieve at tremendously high levels," and "ensure that all Individualized Education Plans (IEP) requirements are met."

## FACTS CONCERNING NAMED PLAINTIFFS

### Z.W.

61.   Z.W. is a fourth grader at AF Crown Heights who has been subjected to inappropriate discipline, including suspension and isolation, for behaviors caused by his disability that are specifically recognized in his IEP and BIP.  He has also been denied a FAPE and deprived of proper accommodations for his disabilities due to the Defendants' failure to properly develop and implement his IEPs throughout his time as a student at AF Crown Heights.

*Background*

62.   Z.W. is a nine-year old boy and the twin brother of Named Plaintiff M.W.  He has been continuously enrolled at AF Crown Heights since kindergarten.  He has been diagnosed with anxiety, autistic features, likely Attention Deficit Hyperactivity Disorder, socialization problems, processing delays, hypotonia, speech and language delays, and asthma, among other conditions.  These diagnosed conditions substantially limit Z.W.'s ability to engage in major life activities, including learning.  Accordingly, Z.W. is a child with a disability within the meaning of IDEA and a qualified individual with a disability within the meaning of Section 504.

63.   DOE has classified Z.W. as having an "Other Health Impairment" ("OHI").  By definition, having an OHI classification signifies that the student's disability "adversely affects" his or her "educational performance."  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz)(10).

64.   Z.W. received services before and during preschool, and when he applied for kindergarten in 2011, he had an IEP providing for physical therapy, occupational therapy, speech and language therapy, counseling, and a paraprofessional.  The IEP directed that he be placed in a restrictive setting with a ratio of 10 students to one teacher and two aides, and expressly rejected a general education setting.  The IEP also contained a BIP.

65.   Z.W. was offered a kindergarten placement at AF Crown Heights through the school's lottery.  AF Crown Heights assured N.C. that the school could and would implement all of the provisions of Z.W.'s IEP and that the school would assist her with obtaining a paraprofessional to support him.  N.C. accepted the placement.

*Facts Relating to the Improper Application of Disciplinary Measures to Z.W.*

66.   Within weeks of Z.W. starting kindergarten, AF Crown Heights informed N.C. that Z.W. was engaging in behaviors that violated the school's code of conduct, that he would be put

on "probation" for 30 days, and that if he continued to engage in the behaviors AF Crown Heights would expel him. These behaviors included moving from his designated spot on the classroom floor, failing to track the teacher with his eyes, fidgeting, responding negatively to loud sounds or bright lights, and fleeing when a teacher confronted him close to his face.

67. These behaviors were all caused by his disabilities, and similar behaviors were described in his BIP and IEP.

68. During Z.W.'s "probation," AF Crown Heights repeatedly directed N.C. to remain with Z.W. all or part of the day at AF Crown Heights or AF Crown Heights would suspend or expel him.

69. During Z.W.'s "probation," AF Crown Heights regularly confined Z.W. for set periods of time in a timeout room—a darkened room barely larger than a closet, with no outdoor windows, and in which the hallway window had been covered. If Z.W. cried or tried to escape, AF Crown Heights added more time to his confinement.

70. On one occasion, N.C. came to AF Crown Heights to find Z.W.'s paraprofessional struggling physically with him to confine him in the timeout room.

71. When N.C. complained to AF Crown Heights about the timeout room, the school told her that the alternative to confinement in the timeout room was suspension. N.C. feared that a suspension during Z.W.'s "probation" would result in his expulsion.

72. Throughout kindergarten, AF Crown Heights confined Z.W. in the timeout room approximately twice per week for approximately 20 minutes at a time. On at least one occasion of which N.C. is aware, Z.W. was confined in the room alone for 50 minutes.

73. During Z.W.'s first, second, third, and fourth grade years, AF Crown Heights continued to discipline Z.W. for behaviors arising from his disabilities, as described in ¶ 66.

Specifically, AF Crown Heights has imposed the following punishments on Z.W. for these behaviors: issuing "corrections"—formal public demerits issued in front of the class to shame the child; imposing detention; suspending him; placing him at a "suspension table" in the back of a classroom and excluding him from classroom activities; sending him to the timeout room and other locations outside his classroom; and requiring N.C. to attend school alongside Z.W.

74.   In approximately March-April 2013, AF Crown Heights punished Z.W. by requiring him to wear a weighted vest for up to eight hours per day, every day, for approximately a month, causing stomach pains and other physical health problems.  Z.W.'s occupational therapist had prescribed therapeutic use of the vest only twice per day for short periods, and Z.W.'s mother never agreed to any use of the vest by anyone other than Z.W.'s occupational therapist.

75.   In approximately January or February 2013, N.C. requested a MDR for Z.W. Neither AF Crown Heights nor DOE provided a MDR for Z.W. in response to that request.

76.   Additionally, on information and belief, in each of the years he has been enrolled at AF Crown Heights, Z.W. has been removed from instruction for time totaling more than ten school days.  As a result, AF Crown Heights and DOE were required, each of those years, to conduct an MDR and to consider whether to develop a BIP specifying appropriate behavioral interventions for Z.W.  Neither AF Crown Heights nor DOE has ever conducted an MDR for Z.W.

77.   In approximately 2014, an AF Crown Heights official told N.C. that although AF Crown Heights accepted children with IEPs, those children would be required to behave exactly as non-disabled students do.

*Facts Relating to the Failure to Properly Develop Z.W.'s IEPs*

78.   Z.W. has had an IEP each year he has been enrolled at AF Crown Heights.

79. A DOE representative was present at each of Z.W.'s IEP meetings.

80. The participants at each of Z.W.'s IEP meetings relied on evaluative data from no later than 2008. As a result, at the IEP meetings held in 2012, 2013, and 2014, the IEP meeting participants did not have appropriately updated data upon which to base the IEP.

81. At the IEP meetings held in 2012, 2013, and 2014, DOE and AF Crown Heights failed to ensure compliance with numerous procedural requirements of the IDEA, including those concerning required attendees at the IEP meetings. Taken together, these failures affected the IEP team's decision-making process, deprived Z.W. of educational benefits, and denied Z.W. a FAPE.

82. Z.W.'s mother has made repeated requests to AF Crown Heights and DOE to have Z.W. reevaluated. She requested in writing in September 2012 that the DOE reevaluate Z.W. N.C. repeatedly followed up with both DOE and AF Crown Heights regarding this request, including in writing, at least through April 2013. N.C. requested that Z.W. be evaluated on many other occasions in 2013, 2014, and 2015, in writing, by email, by phone, and in person. Some of these requests were directed to AF Crown Heights, and others were directed to the DOE. For example, in June 2015, N.C. went to the CSE in person to request an evaluation for Z.W.

83. In violation of its legal obligation to re-evaluate Z.W. no less than every three years, and without meaningfully considering whether Z.W.'s IEP was meeting his unique educational needs, DOE told N.C. that because Z.W. was already receiving "all the services that are offered," there was no need for him to be evaluated.

84. DOE failed to re-evaluate Z.W. until late September 2015.

85. On several occasions, the AF Crown Heights and DOE participants at Z.W.'s IEP meetings deprived Z.W.'s mother of the opportunity to participate meaningfully in the IEP

process.  For example, at the IEP meeting convened in 2012, before Z.W.'s first grade year, the meeting participants, including Z.W.'s mother, determined to maintain testing accommodations that Z.W. had received the previous year.  The IEP that followed that meeting, however, did not provide testing accommodations.  Z.W.'s mother was not informed that the IEP would not reflect the meeting participants' determination concerning testing accommodations and did not learn of this alteration until considerably later.

86.  Z.W.'s IEP during first, second, and third grade directed that he be placed in an ICT classroom.

87.  On information and belief, the AF Crown Heights and/or DOE participants at Z.W.'s IEP meetings during his first, second, and third grade years determined in advance of each meeting, and based on inappropriate criteria, to place Z.W. in a setting available at AF Crown Heights, such as an ICT classroom or general education classroom, even though such settings are not educationally appropriate for Z.W. in light of his disabilities. .

88.  On information and belief, the AF Crown Heights and/or DOE participants at Z.W.'s IEP meetings for those years did not adequately consider whether alternative educational settings not offered at AF Crown Heights, such as a class with a smaller student to teacher ratio, would have been more reasonably calculated to enable Z.W. to receive educational benefits.

89.  AF Crown Heights offers no settings other than general education classrooms and classrooms that it characterizes as ICT classrooms, but that in fact do not satisfy the legal requirements for ICT classrooms.

*Facts Relating to the Failure to Properly Implement Z.W.'s IEPs*

90. On information and belief, in first, second, and/or third grade, Z.W. was placed in classrooms that AF Crown Heights held out as ICT classrooms, but that did not meet the legal requirements because they did not include a teacher who was certified in special education.

91. Several times in 2014 and 2015, an AF Crown Heights official admitted to N.C. that the classroom in which Z.W. was placed was not a compliant ICT classroom.

92. AF Crown Heights and DOE have failed to ensure that Z.W. received the occupational therapy, physical therapy, paraprofessional services and speech and language therapy mandated by his IEPs.

93. During Z.W.'s first, second, and third grade years, therapists who were assigned to provide IEP-mandated services to Z.W. routinely failed to appear to provide Z.W.'s services as scheduled and failed to provide make up services. Z.W. frequently went for weeks or more without receiving these services.

94. During Z.W.'s fourth grade year, which began in August 2015, AF Crown Heights and DOE failed to provide any occupational therapy to Z.W. for approximately five weeks, and failed to provide any physical therapy to Z.W. for approximately two months. No makeup services have been scheduled.

95. During his third grade year, approximately five different paraprofessionals were assigned to Z.W.

96. When N.C. complained to a DOE representative in approximately early 2013 that AF was not providing appropriate services to Z.W., the DOE representative told N.C. that DOE does not govern Achievement First, that AF Crown Heights is "free range," and that there is nothing DOE can do to ensure that AF Crown Heights implements the services mandated in Z.W.'s IEP.

97. AF Crown Heights has failed to provide the testing accommodations mandated by Z.W.'s IEPs. On multiple tests for which his IEPs mandated accommodations, Z.W. was not provided time-and-a-half and was not tested in a separate room/location. This negatively affected Z.W.'s performance on those tests.

98. On information and belief, AF Crown Heights and DOE have failed to provide Z.W.'s IEPs to his teachers.

99. Some or all of the IEPs in place for Z.W. have included a BIP, but, on information and belief, AF Crown Heights and DOE have failed to provide Z.W.'s BIPs to his teachers. AF Crown Heights has failed to implement the behavioral strategies outlined in his BIPs and has routinely disciplined him in a manner inconsistent with his BIPs.

100. As a result of the violations described above, Defendants have discriminated against Z.W. by reason of his disability and denied him a FAPE.

<u>D.W.</u>

101. D.W. is a third grader at AF Crown Heights who has been denied a FAPE by the AF Defendants and DOE because they have failed to develop IEPs in conformity with the procedural requirements of the IDEA; failed to provide the educational supports and services and other accommodations mandated by his IEPs; and unlawfully disciplined him for behaviors arising from his disabilities.

*Background*

102. D.W. is a nine year old boy who has been continuously enrolled at AF Crown Heights since kindergarten. D.W. has been diagnosed with autism and related developmental delays. These diagnosed conditions substantially limit D.W.'s ability to engage in major life activities, including learning. Accordingly, D.W. is a child with a disability within the meaning of IDEA and a qualified individual with a disability within the meaning of Section 504.

103. The DOE has classified D.W. as having "[a]utism." By definition, having this classification signifies that the student's disability "adversely affects" his or her "educational performance. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz)(1).

104. D.W. was diagnosed with speech delays at a young age and received services before and during preschool. He had an IEP directing that he be provided with occupational therapy and counseling, among other things.

105. D.W. was offered a kindergarten placement at AF Crown Heights through the school's lottery. At an orientation event for AF Crown Heights in approximately August or September of 2011, an AF Crown Heights official assured D.W.'s mother that the school could and would implement D.W.'s IEP. She decided to accept the placement.

*Facts Relating to the Failure to Properly Implement D.W.'s IEPs*

106. In spite of its representations that it would implement D.W.'s IEP, and in spite of the IEP directing that he be educated in an ICT classroom, AF Crown Heights placed D.W. in a general education classroom for the 2011-12 school year.

107. D.W. was unable to understand or follow the instruction in his general education classroom. As a result, he did not make reasonable academic progress during that year.

108. In approximately late 2011, AF Crown Heights recommended to DOE that it arrange for a neuropsychological evaluation for D.W. The evaluation was conducted in January 2012, and D.W. was diagnosed with autism.

109. In March 2012, DOE convened an IEP meeting for D.W. DOE and AF Crown Heights generated an IEP providing that D.W. be placed in a classroom with a ratio of eight students to one teacher and one paraprofessional, and that he receive occupational therapy, speech and language therapy, and counseling.

110.  Contrary to this IEP, AF Crown Heights continued D.W.'s placement in a general education classroom.

111.  At the completion of the 2011-2012 school year, AF Crown Heights required D.W. to repeat kindergarten for failure to make academic progress.

112.  During the 2012-13 school year, AF Crown Heights again failed to place D.W. in a classroom that complied with the IEP's direction concerning educational setting.

113.  For each of the subsequent years D.W. has been enrolled at AF Crown Heights, the IEPs in place have provided that he be placed in an ICT classroom.

114.  On information and belief, some or all of the classrooms in which D.W. was placed did not meet the requirements for an ICT classroom, because they did not include teachers who were properly trained and certified in special education.

115.  During D.W.'s two years of kindergarten and year of first grade, his mother, D.M., repeatedly requested an amendment to D.W.'s IEP so that he would be provided a paraprofessional.  AF Crown Heights repeatedly told D.M. that D.W. did not need a paraprofessional.

116. In December 2013, AF Crown Heights told D.M. that AF Crown Heights had requested a paraprofessional for D.W.

117. In December 2013, DOE convened a meeting to discuss providing paraprofessional support to D.W. and, on information and belief, decided to do so but did not amend D.W.'s IEP to reflect that decision.

118. AF Crown Heights did not arrange for a paraprofessional to assist D.W. until approximately March 2014.

119. During the summer of 2014, before D.W. started second grade, D.M. obtained a prescription for physical therapy from D.W.'s pediatrician.  In approximately September 2014, she provided this prescription to AF Crown Heights and requested that D.W. be evaluated for physical therapy services.

120. In December 2014, DOE and AF Crown Heights created a new IEP for D.W. that provided for occupational therapy, speech and language therapy, counseling and other services, but made no provision for physical therapy.

121. Neither AF Crown Heights nor DOE arranged for a physical therapy evaluation of D.W. until May 2015.

122. AF Crown Heights and DOE failed to ensure that D.W. received the occupational therapy, speech and language therapy, and counseling as directed by his December 2014 IEP. For example, during Spring 2015, no occupational therapy was provided to D.W. for at least three weeks.

123. During the current academic year, which began in August 2015, AF Crown Heights and DOE failed to provide occupational therapy to D.W. for approximately five weeks, failed to provide physical therapy to D.W. for approximately two months, failed to provide at least three sessions of speech/language services, and failed to provide at least two counseling sessions.  No makeup services have been scheduled.

*Facts Relating to the Failure to Properly Develop D.W.'s IEPs*

124.  In December 2014, DOE convened an IEP meeting for D.W.  A DOE representative was present at that meeting.  At that meeting, DOE and AF Crown Heights failed to ensure compliance with numerous procedural requirements of the IDEA, including requirements concerning required attendees at the IEP meetings.  Taken together, these failures

affected the IEP team's decision-making process, deprived D.W. of educational benefits, and denied D.W. a FAPE.

125.   On information and belief, DOE and AF Crown Heights did not adequately or meaningfully consider whether alternative educational settings, such as a class with a smaller student to teacher ratio, would have been more reasonably calculated to meet D.W.'s educational needs.

126.   The IEP that resulted from the meeting states that D.W. benefits from being in small learning groups with a low student-to-teacher ratio.  Nonetheless, DOE and AF Crown Heights approved D.W. for placement in an ICT classroom at AF Crown Heights.  The IEP rejects settings more restrictive than an ICT classroom (*i.e.*, having a lower student-to-teacher ratio) as "too restrictive" without explanation.

127.   The IEP that resulted from the December 2014 IEP meeting provides that D.W. should receive occupational therapy, speech and language therapy, counseling, and a paraprofessional; that he be tested in a separate room from other children, with "on-task focusing prompts"; and that he have a BIP in place.

128. Neither DOE nor AF Crown Heights provided D.M. with a copy of the IEP.  AF Crown Heights ignored D.M.'s repeated requests for a copy of the IEP.  D.M. was only provided a copy of the IEP months after the meeting.

*Facts Relating to the Improper Application of Disciplinary Measures to D.W.*

129.   AF Crown Heights has repeatedly disciplined D.W. inappropriately for behaviors that are caused by, or have a direct and substantial relationship to, his disability.

130.   For example, AF Crown Heights has repeatedly disciplined D.W. for the following behaviors: failing to sit still with his hands stationary for an entire class period; failing to

immediately focus his eyes on a spot directed by a teacher; moving during class or hiding under his desk; perceived misbehavior in the noisy, crowded cafeteria, an environment that can be overstimulating to children with D.W.'s diagnosis; responding negatively or fearfully to aggressive teacher reprimands; and, because of D.W.'s slower processing times, failing to answer questions quickly or on the first repetition.

131. To discipline D.W. for these behaviors, AF Crown Heights has imposed the following punishments: sending him to a dean's office; forcing him, as a third-grader, to spend all or part of the school day in a second-grade classroom; requiring him to miss P.E. class; and giving him a "silent lunch," where he must sit silently in a room to eat without talking to other students or moving.

132. These punishments are particularly harmful to D.W. because they can create a cascading effect that makes it increasingly difficult for D.W. to regain his self-control. For example, when D.W. is given a silent lunch, this punishment triggers an emotional breakdown, and D.W. spends the lunch period crying instead of eating; he is then hungry throughout the remainder of the day which, in turn, makes learning extremely difficult.

133. D.M. has repeatedly protested to AF Crown Heights that the discipline the school imposes on D.W. unfairly punishes him for behaviors arising from his disability.

134. On each occasion, despite being aware of D.W.'s disability, AF Crown Heights has informed D.M. that D.W. must be held to the same standards as non-disabled students.

135. On one occasion, when D.M. explained to D.W.'s teacher that autistic children cannot follow directions to focus their eyes on a teacher, the teacher said she cannot treat D.W. differently than other students, that he must be accountable for what he does, and that she cannot give D.W. any special lenience.

136. On another occasion, an AF Crown Heights official told D.M. that D.W.'s behavior indicated that he does not respect adults. The AF Crown Heights official added that there are rules, and D.W. has to follow them.

137. Additionally, on information and belief, in each of the years he has been enrolled at AF Crown Heights, D.W. has been removed from instruction for time totaling more than ten school days. As a result, AF Crown Heights and DOE were required, each of those years, to conduct an MDR and to consider whether to develop a BIP specifying appropriate behavioral interventions for D.W. Neither AF Crown Heights nor DOE has ever conducted an MDR for D.W.

138. Through the violations described above, Defendants have discriminated against D.W. by reason of his disability, and have denied him a FAPE.

### B.B.

139. B.B. is currently a seventh grader at AF Crown Heights who has, among other harms, been deprived of several months of necessary therapy because of AF Crown Heights and DOE's failure to properly and lawfully develop his IEP in conjunction with his parent and their failure to implement the IEP that was developed. The gap in therapeutic treatment caused B.B. to experience set-backs in his education and development.

### *Background*

140. B.B. is a twelve year old boy who has been continuously enrolled at AF Crown Heights since kindergarten. B.B. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and fine motor delays in the summer of 2010, when he was six years old. These impairments substantially limit B.B.'s ability to engage in major life activities, including

learning.  Accordingly, B.B. is a child with a disability within the meaning of IDEA and a qualified individual with a disability within the meaning of Section 504.

141.  The DOE has classified B.B. as having an "Other Health Impairment" ("OHI").  By definition, having an OHI classification signifies that the student's disability "adversely affects" his or her "educational performance."  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz)(10).

*Facts Relating to the Failure to Properly Develop and Implement B.B.'s IEPs*

142.  After B.B.'s evaluations in the summer of 2010, DOE convened an IEP meeting for B.B.  An IEP was written for B.B. that directed occupational therapy and counseling, and provided that he would take tests in a separate room from other children, with time-and-a-half provided for each test.

143.  Since that time, IEPs that provided for occupational therapy, counseling, and testing accommodations were continuously in place until January 2015, when B.B. was in sixth grade.

144. In January 2015, DOE convened an IEP meeting for B.B.  A DOE representative was present at that meeting.  Before and during the meeting, an AF Crown Heights representative pressured B.B.'s mother to agree that B.B. no longer needed an IEP or any services or accommodations.  B.B.'s mother refused, as she believed the services and accommodations were necessary for B.B. to make educational progress.

145. The IEP meeting participants ultimately agreed to maintain B.B.'s previous services and accommodations: occupational therapy, counseling, instruction in an ICT classroom, and testing accommodations.

146. Over a month later, B.B.'s mother learned from B.B. that he had not been receiving occupational therapy.

147. When B.B.'s mother inquired about the failure to provide occupational therapy as directed, AF Crown Heights admitted to her that, following the January IEP meeting, no IEP had been generated or put in place, and B.B. had not received any services or accommodations since that time, because AF Crown Heights did not believe he required an IEP.

148. B.B.'s mother protested that this contravened the determination of the January IEP meeting participants and insisted that his services be reinstated immediately.

149. AF Crown Heights and DOE convened an emergency IEP meeting by telephone and determined to reinstate an IEP for B.B. that maintained his previous services and accommodations.

150. By the time B.B.'s services were reinstated, B.B. had missed over two months of services. As a result, B.B.'s educational progress suffered a setback from which he has not yet recovered.

151. On many other occasions, even while an IEP was in place mandating occupational therapy, B.B. has not received occupational therapy as directed.

152. During B.B.'s seventh grade year, which began in August 2015, AF Crown Heights and DOE failed to provide any counseling or occupational therapy for approximately six weeks. No makeup services have been scheduled.

153. At the time of both 2015 IEP meetings, B.B. had not been evaluated since 2010, more than three years before the IEP meetings took place, and the IEP meeting participants therefore did not have appropriately updated data upon which to base the IEP.

154. Each year since B.B. was in fourth grade, B.B.'s IEPs have provided that he be educated in an ICT classroom.

155. On information and belief, B.B. has not been educated in a classroom meeting the requirements for an ICT classroom, because none of his classrooms has included a teacher who was properly trained and certified in special education.

*Facts Relating to the Improper Application of Discipline to B.B.*

156. AF Crown Heights has repeatedly disciplined B.B. for behaviors that are caused by, or have a direct and substantial relationship to, his disability.

157. For example, because of B.B.'s documented disabilities related to his fine motor skills, he has occasionally dropped his pen. Because of his ADHD, he sometimes fidgeted, or spoke out of turn. For these behaviors, AF Crown Heights gave him "corrections," a form of punishment for infractions of the code of conduct. On many occasions, after several corrections, AF Crown Heights gave B.B. detention.

158. Through the violations described above, Defendants have discriminated against B.B. by reason of his disability, and have denied him a FAPE.

### M.W.

159. M.W. is a fourth grader at AF Crown Heights who has been deprived of necessary educational services and supports because his IEPs have been based on outdated information and because even the services directed by his IEPs have not been properly implemented by AF Crown Heights. He has also been subjected to extreme disciplinary measures that have had severe effects on him.

*Background*

160. M.W. is a nine year old boy and the twin brother of Z.W. He has been continuously enrolled at AF Crown Heights since kindergarten.

161. M.W. has been diagnosed with anxiety, behavioral and social problems, general gross motor developmental delays, sensory processing deficits, hypotonia, and asthma. These impairments substantially limit M.W.'s ability to engage in major life activities, including learning. Accordingly, M.W. is a child with a disability within the meaning of IDEA and a qualified individual with a disability within the meaning of Section 504.

162. The DOE has classified M.W. as having an "Other Health Impairment" ("OHI"). By definition, having an OHI classification signifies that the student's disability "adversely affects" his or her "educational performance." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz)(10).

163. M.W. had significant speech delays as a young child, and consistent with his then-current IEP, he was receiving occupational therapy, physical therapy, speech and language therapy and other services before and during preschool. That IEP directed that M.W. be placed in a classroom with a small student to teacher ratio.

164. M.W. was offered a kindergarten placement at AF Crown Heights through the school's lottery. AF Crown Heights assured M.W.'s mother that the school could and would implement all of the provisions of M.W.'s IEP and that the school would place M.W. into a classroom that would have two teachers and therefore a low student to teacher ratio.

*Facts Relating to the Failure to Properly Develop M.W.'s IEPs*

165. M.W. has had an IEP each year he has been enrolled at AF Crown Heights.

166. A DOE representative has been present at each of M.W.'s IEP meetings.

167. The participants at each of M.W.'s IEP meetings relied on evaluative data from no later than 2008; as a result, at the IEP meetings held in 2012, 2013, and 2014, the IEP meeting participants did not have appropriately updated data upon which to base the IEP.

168. At the IEP meetings held in 2012, 2013, and 2014, DOE and AF Crown Heights failed to ensure compliance with numerous procedural requirements of the IDEA, including

31

requirements concerning required attendees at the IEP meetings. Taken together, these failures affected the IEP team's decision-making process, deprived M.W. of educational benefits, and denied M.W. a FAPE.

169. M.W.'s mother made repeated requests to AF Crown Heights and DOE to have M.W. evaluated in 2013, 2014, and 2015; these requests have been in writing, by email, by phone, and in person.

170. Throughout this period, DOE has not provided an evaluation for M.W. Indeed, DOE failed to re-evaluate M.W. until early October 2015.

171. At the IEP meeting convened in 2013, before M.W.'s second grade year at AF Crown Heights, no representative or teacher from AF Crown Heights appeared at the meeting or otherwise conveyed information about M.W. to the IEP team. As a result, the IEP meeting participants did not have sufficient information upon which to base the IEP.

172. On multiple occasions, AF Crown Heights has pressured M.W.'s mother, N.C., to "declassify" him, which would result in eliminating his IEPs and the educational services and supports directed by his IEPs, and has pressured her to consent to eliminating services, without evidence that he had made sufficient progress to no longer need those services and supports.

173. For example, in approximately May-June 2013, an AF Crown Heights official told N.C. that, according to M.W.'s physical therapist, M.W. no longer needed physical therapy, and directed her to sign a document consenting to declassify M.W. N.C. refused to sign the document.

174. In fact, N.C. learned, M.W.'s physical therapist believed that M.W. continued to require physical therapy and had communicated his belief to AF Crown Heights. N.C.

successfully advocated at M.W.'s IEP meeting to retain physical therapy as a part of M.W.'s IEP.

*Facts Relating to the Failure to Properly Implement M.W.'s IEPs*

175. On many occasions, AF Crown Heights and DOE have failed to provide services and supports to M.W. in compliance with his IEPs.

176. M.W.'s current IEP directs that he receive physical therapy twice per week, for thirty minutes per session. During M.W.'s fourth grade year, which began in August 2015, AF Crown Heights and DOE failed to provide any physical therapy for approximately two months. Only one makeup session, for counseling, was scheduled; no other makeup services have been scheduled.

177. Similarly, during M.W.'s first, second, and third grade years, AF Crown Heights and DOE failed to provide physical therapy in compliance with M.W.'s IEPs. M.W. frequently went for weeks or more without receiving these services.

178. On information and belief, DOE and AF Crown Heights have failed to provide M.W.'s IEPs to his teachers.

*Facts Relating to the Improper Application of Disciplinary Measures to M.W.*

179. In approximately December 2012, when M.W. was in first grade, M.W. requested permission to use the restroom. While he was "tracking" the first of two teachers in the classroom, as AF Crown Heights requires, the second teacher granted him permission to use the restroom. M.W. did not see and thus did not acknowledge the second teacher.

180. To punish M.W. for failing to track him, the second teacher approached M.W. and began yelling at a high volume directly in M.W.'s face. The teacher also forcefully kicked the

chair that M.W. was sitting in. The verbal abuse and aggressive actions continued for several minutes.

181. N.C., who had come to AF Crown Heights for another reason, reached the classroom in the middle of the assault and witnessed the teacher's behavior. She also witnessed her son's acute fear.

182. This conduct was traumatic for M.W. As a result of this incident, M.W. has experienced nightmares, behavioral problems, and excessive anxiety at school and at home. He has also required additional counseling to address his trauma.

183. Shortly after the incident, N.C. complained to the principal of AF Crown Heights. On information and belief, at that time, AF Crown Heights did not engage in an investigation of the assault, did not generate an incident report, did not alert M.W.'s other teachers or the Dean of Special Services about the assault, and took no disciplinary action against the teacher. The teacher remained at AF Crown Heights for the remainder of the school year.

184. In June 2013, N.C. became aware that AF Crown Heights had not taken reasonable steps regarding the assault and renewed her complaint. Only at that time did AF Crown Heights conduct an investigation.

185. As a result of the violations described above, Defendants have discriminated against M.W. by reason of his disability, and have denied him a FAPE.

### S.Z.

186. S.Z. is a fourth grader who has been denied a FAPE by AF Crown Heights's and DOE's repeated failure to refer him for an evaluation despite his mother's repeated requests and the clear academic and behavioral signs that an evaluation of his disabilities was required. As a

result, S.Z. has not received any accommodations for his disabilities at AF Crown Heights and continues to struggle academically and behaviorally.

*Background*

187. S.Z. is a nine year old boy who has been enrolled at AF Crown Heights since kindergarten.

188. S.Z. received services before and during preschool, including occupational therapy and speech/language therapy, to address speech delays.  S.Z.'s disabilities, for which he has not been evaluated since he began kindergarten, substantially limit his ability to engage in major life activities, including learning.  Accordingly, S.Z. is a child with a disability within the meaning of IDEA and a qualified individual with a disability within the meaning of Section 504.

*Facts Relating to the Failure to Evaluate S.Z.*

189. On multiple occasions during S.Z.'s enrollment at AF Crown Heights, AF Crown Heights has had reason to suspect that S.Z. had a disability and that he might need special services.

190. At the end of first grade in June 2013, AF Crown Heights told S.Z.'s mother that S.Z.'s promotion to second grade was in doubt because of his poor academic progress but ultimately determined to promote him.

191. During second, third, and fourth grade, S.Z. did not make reasonable academic progress.  For example, he repeatedly received failing test scores.

192. During second, third, and fourth grade, S.Z. exhibited a pattern of behaviors, several times per week, for which AF Crown Heights removed him from class.

193. On multiple occasions between September 2013 and June 2015, S.Z.'s mother, A.Z., asked AF Crown Heights if S.Z. should be evaluated for special services and/or an IEP. Each time, AF Crown Heights told her that there was no need for him to be evaluated.

194. In early May 2015, A.Z. sent a written request to AF Crown Heights that S.Z. be evaluated. AF Crown Heights prepared a letter to the CSE requesting an evaluation for S.Z., which it provided to A.Z. to sign so that AF Crown Heights could submit it to the CSE. A.Z. signed the letter and returned it to AF Crown Heights in early May.

195. As of the filing of this Complaint, DOE has not arranged an evaluation for S.Z.

*Facts Relating to the Improper Application of Disciplinary Measures to S.Z.*

196. During the period in which AF Crown Heights had reason to suspect S.Z. had a disability and required evaluation, AF Crown Heights nonetheless punished S.Z. for the following behaviors, among others: failing to keep his hands crossed; failing to sit up straight; failing to track the primary teacher with his eyes; failing to pick up his feet high enough and keep his hands by his side when students were required to march in the hallways; "failing to follow orders"; and expressing displeasure at being disciplined.

197. As punishments for these behaviors, AF Crown Heights confined S.Z. in the timeout room; suspended him; forced him, as a third grader, to spend all or part of the school day in a kindergarten or first grade classroom because he was "acting like a baby"; sent him to sit in an actual box in a hallway; and kept him in an office for an entire school day.

198. In October 2014, when S.Z. was in third grade, A.Z. requested a meeting with a dean at AF Crown Heights to discuss S.Z.'s academic and behavioral problems. Following the meeting, AF Crown Heights developed what it called a "Behavior Plan" for S.Z. This 11-line

document purported to provide for "incentives" and "consequences" for S.Z.'s behavior in school and in his home.

199. S.Z.'s teachers never implemented the "Behavior Plan."

200. As a result of AF Crown Heights and DOE's failure to evaluate S.Z., he has been denied services to which he has been entitled, has been subjected to unlawful discrimination, and has been denied a FAPE.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

201. Named Plaintiffs bring this action, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a class consisting of:

> All students at AF Crown Heights who have disabilities and are in need of special education and related services.

202. The class is so numerous that joinder of all class members in this action would be impracticable; on information and belief, there are over one hundred persons in the class.

203. DOE reported that, in the 2013-14 school year, AF Crown Heights enrolled 943 students, of which 11.8% of students (or 111 students) have been identified as having disabilities.

204. In addition, there are numerous other students enrolled at AF Crown Heights who have disabilities and are in need of special education and related services whom AF Crown Heights and DOE have not identified as having disabilities.

205. Defendants' violations constitute a general and systemic failure to ensure a free and appropriate education for children with disabilities who are enrolled at AF Crown Heights and undermine the framework and procedures for assessing and placing these students in appropriate educational programs. These violations cannot be addressed by resort to the administrative hearing process.

206. Administrative hearing officials do not have the authority to provide relief to all members of the class, cannot direct AF Crown Heights to change its policies or practices with respect to all students with disabilities, cannot implement the school-wide injunctive relief sought in this action, and cannot resolve hundreds of individual complaints efficiently or consistently.

207. The expertise of administrative officials in determining appropriate placements and services for individual students with disabilities is not required for resolving challenges to AF Crown Heights's, AF Inc.'s, and DOE's systemic policies and practices affecting all AF Crown Heights students with disabilities.

208. Named Plaintiffs will adequately and fairly protect the interests of all members of the proposed class because they have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed class.

209. Named Plaintiffs are represented by the New York Legal Assistance Group and the law firm Jenner & Block. Attorneys at both firms are experienced in complex federal litigation and class action litigation.

210. The claims of the named Plaintiffs are typical of the claims of the class because they have suffered, and are suffering, as a result of Defendants' policies and practices, as described further above and below.

211. Class members present common questions of law and fact and these questions predominate over any individual questions.

212. The common questions include, but are not limited to:

    a.  whether AF Defendants' policies and practices of failing to identify or refer for evaluation students known or suspected to have disabilities, as set out in ¶¶ 214-

217, and DOE's practice of failing to conduct reevaluations as required by law as set out in ¶¶ 225-227, deny those students a FAPE or discriminate against them;

b.  whether DOE's practices of improperly developing IEPs and creating IEPs that are insufficient to provide a FAPE to students at AF Crown Heights, as set out in ¶¶ 228-233, deny students a FAPE and/or discriminates against them;

c.  whether AF Defendants' failure to implement students' IEPs, and DOE's failure to ensure that students' IEPs are implemented, as set out in ¶¶ 218, 232, denies those students a FAPE; and

d.  whether AF Defendants' and DOE's treatment of students who are punished for behaviors related to their disabilities deprives those students of a FAPE and discriminates against them, as set out in ¶¶ 219-221, 230-232.

213. Defendants have applied the same policies and practices to members of the plaintiff class, as described further below, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

<u>AF Defendants</u>

214. The AF Defendants do not have effective policies or procedures to ensure consistent identification and referral to DOE for evaluation of children with known or suspected disabilities.

215. The AF Defendants do not train the teachers or staff at AF Crown Heights to identify or refer students to DOE for evaluation of known or suspected disabilities.

216. The AF Defendants have a practice of failing to timely refer for evaluation students at AF Crown Heights whose parents have requested evaluations.

217. The AF Defendants have a practice of failing to refer AF Crown Heights students for reevaluations at least every three years.

218. The AF Defendants have a practice of failing to implement the IEPs of AF Crown Heights students as required by law, including by:

    a.    failing to provide students with occupational therapy, physical therapy, speech and language therapy, counseling, and/or paraprofessional support in the manner directed by students' IEPs;

    b.    failing to comply with IEPs that direct placement of students in ICT classrooms by placing those students in classrooms that do not comply with legal requirements for ICT classrooms because there is no appropriately-qualified special education teacher in the classroom.

    c.    failing to provide mandated testing accommodations, including, for example, by failing to provide students time and a half on tests where their IEPs direct that accommodation;

    d.    failing to implement BIPs; and

    e.    failing to convey to the teachers of a student with an IEP the information necessary to ensure that the student's IEP is implemented and the student's educational needs are met, including information concerning the necessary instructional and testing accommodations and the necessary modifications, if any, to implement a student's BIP.

219. The AF Defendants have a policy and practice of failing or refusing to adapt AF Crown Heights's strict code of conduct to accommodate students with disabilities, and the AF Defendants have a practice of punishing students with disabilities for behaviors that the AF

Defendants know or should know are caused by, or have a direct and substantial relationship to, the students' disabilities.

220. The AF Defendants have a policy and practice of failing to make determinations required by law about whether an AF Crown Heights student's educational placement has been changed because the student has spent ten total days during a school year away from instruction because of behavior-related removals.

221. The AF Defendants have a policy and practice of sending AF Crown Heights students with disabilities to timeout rooms in a manner that is not authorized by law.

222. These policies and practices deny students at AF Crown Heights a FAPE.

223. These policies and practices discriminate against AF Crown Heights students with disabilities.

224. In engaging in these policies and practices, the AF Defendants have acted with deliberate or reckless indifference to students' federally protected rights, with bad faith, and/or with gross misjudgment.

<u>DOE</u>

225. DOE has a practice of failing to identify and/or refer for evaluation AF Crown Heights students that DOE knows or has reason to suspect have disabilities, including students whose parents have requested evaluations; whose academic performance has fallen below grade level; who are failing to make academic progress; who are not promoted from one grade to the next, sometimes repeatedly; and/or who routinely manifest, and are disciplined for, behaviors that stem from recognizable disabilities.

226. DOE has a practice of failing to conduct timely evaluations of AF Crown Heights students with known or suspected disabilities.

227. DOE has a practice of failing to conduct reevaluations at least every three years or otherwise ensure that AF Crown Heights students are reevaluated at least every three years.

228. DOE has a practice of failing to conduct IEP meetings for AF Crown Heights students in the manner required by law, including by:

    a.    failing to ensure attendance and participation by the student's teachers and other individuals required by law;

    b.    depriving the student's parent(s) of a meaningful opportunity to participate in developing the student's IEP;

    c.    failing to ensure that the IEP is based on adequate information and an accurate classification of the student, including an up-to-date evaluation;

    d.    failing to consider meaningfully whether a student's behaviors interfere with his or her education and failing to develop BIPs where required by law; and

    e.    approving, permitting, or deciding that a student's IEP will direct placement of a student at AF Crown Heights without regard to whether AF Crown Heights offers an educational setting that is appropriate for the student's needs, and/or directs such placement even though AF Crown Heights does not offer, and does not intend to create, an educational setting that is appropriate for the student's needs.

229. DOE has a practice of failing to timely produce IEPs and of failing to ensure that the IEPs of AF Crown Heights students are provided to parents and teachers.

230. DOE has a practice of failing to conduct MDRs for students at AF Crown Heights whose educational placement has been changed.

231. DOE has a practice of failing to conduct FBAs for students at AF Crown Heights where required by law.

232. DOE has a policy and/or practice of failing to take the steps necessary to ensure that AF Crown Heights students are receiving the special education and services mandated by those students' IEPs, which, as the LEA, DOE is required to do.

233. In engaging in these practices, DOE has acted with deliberate or reckless indifference to students' federally protected rights, with bad faith, and with gross misjudgment.

## FIRST CAUSE OF ACTION

(IDEA, 20 U.S.C. § 1400 *et seq.*, and implementing regulations)

*Against AF Crown Heights and AF Inc.*

234. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 233 above.

235. Defendant AF Crown Heights has denied a FAPE to Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*, by:

    a. failing to identify or refer for evaluation students known or suspected to have disabilities;

    b. failing to implement students' IEPs;

    c. disciplining AF Crown Heights students with disabilities for behaviors that violate the AF Defendants' code of conduct and failing or refusing to take the steps required by law to accommodate students' disabilities.

236. Defendant AF Inc. has denied a FAPE to Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*, in the following ways:

a. through its hiring, training, staffing, and/or supervision of teachers and staff at AF Crown Heights, causing, in whole or in part, AF Crown Heights's failure to identify or refer for evaluation students known or suspected to have disabilities;

b. through its hiring, training, staffing, and/or supervision of teachers and staff at AF Crown Heights, causing, in whole or in part, AF Crown Heights's failure to ensure that students' IEPs are implemented; and

c. developing AF Defendants' code of conduct  and directing AF Crown Heights to enforce it fully and strictly, without accommodating students with disabilities.

## SECOND CAUSE OF ACTION

(IDEA, 20 U.S.C. § 1400 *et seq.*, and implementing regulations)

*Against DOE*

237. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 236 above.

238. Defendant DOE has denied a FAPE to Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*, by:

a. failing to identify or evaluate students known or suspected to have disabilities, and failing to conduct reevaluations as required by law;

b. improperly developing IEPs;

c. failing to conduct MDRs and FBAs as required by law; and

d. failing to take the steps necessary to ensure that students at AF Crown Heights are receiving the special education and services mandated by those students' IEPs.

## THIRD CAUSE OF ACTION

(IDEA, 20 U.S.C. § 1400 *et seq.*, and implementing regulations)

*Against NYSED*

239. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 238 above.

240. NYSED is New York's SEA under the IDEA.  It is therefore responsible for ensuring that IDEA requirements are met throughout the State.

241. As the SEA, NYSED has denied a FAPE to the Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*, by :

  a.  failing to ensure that AF Defendants comply with the requirements of the IDEA and meet the educational standards of the SEA, as enumerated in paragraphs 234-236; and

  b.  failing to ensure that DOE complies with the requirements of the IDEA and meets the educational standards of the SEA, as enumerated in paragraphs 237-238.

## FOURTH CAUSE OF ACTION

(Section 504, 29 U.S.C. § 794(a), and implementing regulations)

*Against AF Crown Heights and AF Inc.*

242. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 241 above.

243. Defendants AF Crown Heights and AF Inc. are subject to Section 504 because they receive federal financial assistance.

244. Defendant AF Crown Heights has discriminated against the Named Plaintiffs and members of the Plaintiff class in violation of Section 504 of the Rehabilitation Act and implementing regulations by denying Plaintiffs a FAPE, subjecting Plaintiffs to discrimination, excluding Plaintiffs from participation in educational programs receiving federal assistance, and denying Plaintiffs the benefits of those programs, solely by reason of Plaintiffs' disabilities, in the following ways:

    a.   failing to identify or refer for evaluation students known or suspected to have

disabilities;

    b.   failing to implement students' IEPs; and

    c.   punishing AF Crown Heights students with disabilities for behaviors that violate

the AF Defendants' code of conduct and failing or refusing to take the steps

required by law to accommodate students' disabilities.

245. Defendant AF Inc. has discriminated against Named Plaintiffs and members of the

Plaintiff class in violation of Section 504 of the Rehabilitation Act and its implementing

regulations by denying Plaintiffs a FAPE, subjecting Plaintiffs to discrimination, excluding

Plaintiffs from participation in educational programs receiving federal assistance, and denying

Plaintiffs the benefits of those programs, solely by reason of Plaintiffs' disabilities in the

following ways:

    a.   through its hiring, training, staffing, and/or supervision of teachers and staff at AF

Crown Heights, causing, in whole or in part, AF Crown Heights's failure to

identify or refer for evaluation students known or suspected to have disabilities;

    b.   through its hiring, training, staffing, and/or supervision of teachers and staff at AF

Crown Heights, causing, in whole or in part, AF Crown Heights's failure to

implement students' IEPs;

    c.   developing the AF code of conduct  and directing AF Crown Heights to enforce it

fully and strictly despite federal and state law.

246. In committing these violations, AF Defendants have acted in bad faith and exercised

gross misjudgment, and have acted with deliberate or reckless indifference to Plaintiffs' federally

protected rights.

## FIFTH CAUSE OF ACTION

(Section 504, 29 U.S.C. § 794(a), and implementing regulations)

*Against DOE*

247. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 246 above.

248. Defendant DOE is subject to Section 504 because it receives federal financial assistance.

249. Defendant DOE has discriminated against the Named Plaintiffs and members of the Plaintiff class in violation of Section 504 and its implementing regulations by denying Plaintiffs a FAPE, subjecting Plaintiffs to discrimination, excluding Plaintiffs from participation in educational programs receiving federal assistance, and denying Plaintiffs the benefits of those programs, solely by reason of Plaintiffs' disabilities in the following ways:

   a. failing to identify or evaluate students known or suspected to have disabilities, and failing to conduct reevaluations as required by law;

   b. improperly developing IEPs;

   c. failing to conduct MDRs and FBAs as required by law; and

   d. failing to take the steps necessary to ensure that students at AF Crown Heights are receiving the special education and services mandated by those students' IEPs.

250. In committing these violations, DOE has acted in bad faith and exercised gross misjudgment, and has acted with deliberate or reckless indifference to Plaintiffs' federally protected rights.

## SIXTH CAUSE OF ACTION

(N.Y. Educ. Law § 4401 *et seq.* and implementing regulations; N.Y. Educ. Law § 2853(4))

*Against AF Crown Heights and AF Inc.*

251. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 250 above.

252. Defendant AF Crown Heights has violated the rights of Named Plaintiffs and members of the Plaintiff class under the New York Education Law and its implementing regulations in the following ways:

   a.  failing to identify or refer for evaluation students known or suspected to have disabilities;

   b.  failing to implement students' IEPs; and

   c.  disciplining AF Crown Heights students with disabilities for behaviors that violate the AF Defendants' code of conduct and failing or refusing to take the steps required by law to accommodate students' disabilities.

253. Defendant AF Inc. has violated the rights of Named Plaintiffs and members of the Plaintiff class under the New York Education Law and its implementing regulations in the following ways:

   a.  through its hiring, training, staffing, and/or supervision of teachers and staff at AF Crown Heights, causing, in whole or in part, AF Crown Heights's failure to identify or refer for evaluation students known or suspected to have disabilities;

   b.  through its hiring, training, staffing, and/or supervision of teachers and staff at AF Crown Heights, causing, in whole or in part, AF Crown Heights's failure to ensure that students' IEPs are implemented; and

   c.  developing the AF Defendants' code of conduct  and directing AF Crown Heights to enforce it fully and strictly, despite federal and state law.

48

## SEVENTH CAUSE OF ACTION

(N.Y. Educ. Law § 4401 *et seq.* and implementing regulations; N.Y. Educ. Law § 2853(4))

*Against DOE*

254. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 253 above.

255. Defendant DOE has engaged in the following policies and practices in violation of the New York Education Law and implementing regulations:

    a.  failing to identify or evaluate students known or suspected to have disabilities, and failing to conduct reevaluations as required by law;

    b.  improperly developing IEPs;

    c.  failing to conduct MDRs and FBAs as required by law;

    d.  failing to take the steps necessary to ensure that students at AF Crown Heights are receiving the special education and services mandated by those students' IEPs.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment:

1.    Certifying this case as a class action, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with a class defined as:

    All students at AF Crown Heights who have disabilities and are in need of special education and related services.

2.    Declaring that:

a.  Defendant AF Crown Heights has denied a FAPE to Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*;

b.  Defendant AF Inc. has denied a FAPE to Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*;

c.  Defendant DOE has denied a FAPE to Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*;

d.  Defendant NYSED has denied a FAPE to the Named Plaintiffs and members of the Plaintiff class in violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, along with its implementing regulations, 34 C.F.R. § 300 *et seq.*;

e.  Defendant AF Crown Heights has discriminated against the Named Plaintiffs and members of the Plaintiff class in violation of Section 504 of the Rehabilitation Act and implementing regulations by denying Plaintiffs a FAPE, subjecting Plaintiffs to discrimination, excluding Plaintiffs from participation in educational programs receiving federal assistance, and denying Plaintiffs the benefits of those programs, solely by reason of Plaintiffs' disabilities;

f.  Defendant AF Inc. has discriminated against Named Plaintiffs and members of the Plaintiff class in violation of Section 504 of the Rehabilitation Act and its implementing regulations by denying Plaintiffs a FAPE, subjecting Plaintiffs to discrimination, excluding Plaintiffs from participation in educational programs

receiving federal assistance, and denying Plaintiffs the benefits of those programs, solely by reason of Plaintiffs' disabilities;

g.  Defendant DOE has discriminated against the Named Plaintiffs and members of the Plaintiff class in violation of Section 504 of the Rehabilitation Act and its implementing regulations by denying Plaintiffs a FAPE, subjecting Plaintiffs to discrimination, excluding Plaintiffs from participation in educational programs receiving federal assistance, and denying Plaintiffs the benefits of those programs, solely by reason of Plaintiffs' disabilities;

h.  Defendant AF Crown Heights has violated the rights of Named Plaintiffs and members of the Plaintiff class under the New York Education Law and its implementing regulations;

i.  Defendant AF Inc. has violated the rights of Named Plaintiffs and members of the Plaintiff class under the New York Education Law and its implementing regulations;

j.  Defendant DOE has violated the rights of Named Plaintiffs and members of the Plaintiff class under the New York Education Law and its implementing regulations;

3.  Enjoining and directing AF Crown Heights to comply with the IDEA, Section 504, and the New York Education Law in all respects;

4.  Enjoining and directing AF Inc. to comply with the IDEA, Section 504, and the New York Education Law in all respects;

5.  Enjoining and directing DOE to comply with the IDEA, Section 504, and the New York Education Law in all respects;

6.      Enjoining and directing NYSED to ensure that AF Defendants and DOE comply with the IDEA in all respects;

7.      Awarding to Plaintiffs:

    a.      compensatory educational services;

    b.      actual and/or compensatory damages against the AF Defendants in an amount to be proven at trial;

    c.      reasonable attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I); and

8.      Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        November 5, 2015

                              **NEW YORK LEGAL ASSISTANCE GROUP**
                              **BETH GOLDMAN, ESQ.**

                              By: _____
                                Jane Greengold Stevens, of counsel
                                Danielle Tarantolo, of counsel
                                Michelle Movahed, of counsel
                            7 Hanover Square, 18th Floor
                            New York, NY 10004
                            Telephone: (212) 613-5000
                            Facsimile:  (212) 750-0820
                            Email:  jstevens@nylag.org
                            Email:  dtarantolo@nylag.org
                            Email:  mmovahed@nylag.org

**JENNER & BLOCK LLP**

By: _____

     Stephen L. Ascher
919 3rd Ave.
New York, New York
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Email:  sascher@jenner.com

*Attorneys for Plaintiffs*